

15 CV 02122

PREET BHARARA
United States Attorney for the
Southern District of New York
By: Sarah E. Paul
Assistant United States Attorney
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2326

RECEIVED
MAR 20 2015
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - )

UNITED STATES OF AMERICA     :

     -v.-       :

APPROXIMATELY $30,007 SEIZED FROM   :
ACCOUNT NUMBER X66-830114 AT
FIDELITY;       :

APPROXIMATELY $193,781 SEIZED FROM   :
ACCOUNT NUMBER X78-186498 AT
FIDELITY;       :

APPROXIMATELY $4,606.71 SEIZED FROM   :
ACCOUNT NUMBER 9349840125 AT WELLS
FARGO; and       :

APPROXIMATELY $13,090 SEIZED FROM   :
ACCOUNT NUMBER 0025578386 AT
HINGHAM INSTITUTION FOR SAVINGS;   :

      Defendants-in-rem.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - )

VERIFIED COMPLAINT

Plaintiff United States of America, by its attorney, Preet Bharara, United States

Attorney for the Southern District of New York, for its verified complaint alleges, upon

information and belief, as follows:

## NATURE OF THE ACTION

1.     This is an action by the United States of America seeking the forfeiture of all

right, title and interest in the following property:

      a.   Approximately $30,007 seized from account number X66-830114 at Fidelity (the "Fidelity Spending Account");

      b.   Approximately $193,781 seized from account number X78-186498 at Fidelity (the "Fidelity Trading Account");

      c.   Approximately $4,606.71 seized from account number 9349840125 at Wells Fargo (the "Wells Fargo Account"); and

      d.   Approximately $13,090 seized from account number 0025578386 at Hingham Institution for Savings (the "Hingham Account").

(collectively, the "Defendants-In-Rem").

      2.    The Defendants-In-Rem were seized by the Federal Bureau of Investigation ("FBI") on or about October 23, 2014, pursuant to court-ordered seizure warrants issued by the Honorable James L. Cott, United States Magistrate Judge in the United States District Court for the Southern District of New York.

      3.    The Defendants-In-Rem are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), because they constitute property traceable to wire fraud, in violation of Title 18, United States Code, Section 1343.

## JURISDICTION AND VENUE

      4.    This Court has jurisdiction pursuant to Title 28, United States Code Sections 1345 and 1355.

      5.    Venue is proper pursuant to Title 28, United States Code, Section 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in the Southern District of New

York.

## PROBABLE CAUSE FOR FORFEITURE

6.      There is probable cause to believe that from at least in or about February 2013 through in or about August 2014, an employee ("Employee-1") of two privately owned companies ("Company-1" and "Company-2", or collectively, the "Companies") devised and employed a scheme to defraud the Companies, in violation of Title 18, United States Code, Section 1343 (wire fraud).  There is probable cause to believe that Employee-1 did so by exploiting his position of employment to secretly move and transfer, including by wire transfer, over $590,000 of the Companies' funds to other accounts that he controlled, including accounts held in his own name, for his own personal use and benefit.  More specifically, Employee-1 devised and employed the scheme, in substance and in part, as follows:

### Employee-1's Position and Duties at the Companies

7.      The Companies, which are incorporated under the laws of Wyoming, and maintain their principal places of business in New York, New York, are engaged in the business of purchasing medical equipment in the United States and reselling it abroad.  The Companies are beneficially owned by two individuals ("Owner-1" and "Owner-2"), both of whom reside in Moscow, Russia.

8.      In or about 2012, Owner-1's wife introduced Employee-1 to Owner-1.  Owner-1's wife met Employee-1 through Employee-1's wife, with whom Owner-1's wife was acquainted.

9.      Prior to meeting Employee-1, Owner-1 and Owner-2 had been running the Companies from overseas, which was geographically difficult.  Accordingly, shortly after

meeting Employee-1, Owner-1 and Owner-2 engaged Employee-1 to become an officer and employee of the Companies. Employee-1 was appointed the director, president, treasurer, and secretary of both Companies.

10.     Employee-1's duties in this capacity included coordinating the Companies' American operations by, among other things, making follow-up contact with medical equipment vendors in the United States, who had initially been identified by the Companies at exhibitions. Employee-1 was required to report to Owner-1 and Owner-2 on a regular basis.

11.     Employee-1's salary for his work at the Companies was, in total, $2,500 per month. Employee-1's was authorized to withdraw this salary from a business checking account maintained by Company-2 at Santander Bank, which bore an account number ending in 2128 (the "2128 Account"). Apart from being authorized to withdraw this salary, Employee-1 was never given permission to withdraw the Companies' funds for his personal purposes.

12.     Employee-1 had the authority to release payments to medical equipment vendors in the United States on behalf of the Companies. However, Employee-1 was only authorized to make such disbursements after receiving specific instructions from Owner-1 and Owner-2 in Moscow.

### Employee-1's Fraud on Company-1

13.     On or about June 29, 2012, Employee-1, with the permission of Owner-1 and Owner-2, opened a business checking account for Company-1 at a New York, New York branch of Santander Bank, which bore an account number ending in 2225 (the "2225 Account"). On the account opening paperwork for the 2225 Account, Employee-1 listed himself as the president of Company-1 and gave himself sole signing authority on the account.

14.    Although Employee-1 initially reported Company-1's business activities to Owner-1 and Owner-2, Employee-1 stopped communicating with Owner-1 and Owner-2 in or about February of 2013.

15.    On or about February 1, 2013, the balance of the 2225 Account was approximately $583,266.30.

<u>Employee-1 Strips the 2225 Account</u>

16.    On or about February 14, 2013, Employee-1 opened a new business money market account for Company-1 at a New York, New York branch of Santander bank, which bore an account number ending in 5003 (the "5003 Account"). On the account opening paperwork for the 5003 Account, Employee-1 listed himself as the president of Company-1 and gave himself sole signing authority on the account. Employee-1 opened the 5003 Account without Owner-1's and Owner-2's knowledge, and without being authorized by Owner-1 or Owner-2 to do so.

17.    On or about February 14, 2013, the same day that Employee-1 opened the 5003 Account, Employee-1 withdrew $550,000 via cashier's check from the 2225 Account and deposited it in the 5003 Account. Owner-1 and Owner-2 are not aware of any legitimate business purpose for transferring $550,000 from the 2225 Account to the 5003 Account. Further, Employee-1 made the transfer without Owner-1's and Owner-2's knowledge, and without being authorized by Owner-1 or Owner-2 to do so.

18.    On or about February 19, 2013, Employee-1 made three additional withdrawals from the 2225 Account, all of which were made without Owner-1's or Owner-2's knowledge or authorization: (i) Employee-1 wrote himself a check from the account for $9,000, which had the memo line "January pay," even though Employee-1 was only authorized to make a salary of

$2,500 per month; (ii) Employee-1 withdrew $3,000 in cash from the account; and (iii) Employee-1 withdrew $20,119.10 from the account via cashier's check.

19.    On or about February 25, 2013, Employee-1 made a check card purchase of $980 from the 2225 Account to "Luxury Dental P," leaving the 2225 Account with a balance of $0. This check card purchase was made without Owner-1's or Owner-2's knowledge or authorization.

### Employee-1 Moves Company-1's Money to His Personal Accounts

20.    On or about February 21, 2013, approximately one week after transferring $550,000 from the 2225 Account to the 5003 Account, Employee-1 withdrew $550,000 from the 5003 Account, in the form of two cashier's checks for $400,000 and $150,000, respectively. Later the same day, Employee-1 deposited the two cashier's checks into a personal savings account that he maintained in his own name at Santander Bank in New York, New York (the "Personal Savings Account"). At the time that Employee-1 deposited the two cashier's checks into the Personal Savings Account, the balance of the Personal Savings Account was approximately $0.46.

21.    On or about February 21, 2013, Employee-1 also deposited into the Personal Savings Account the $20,119.10 cashier's check that he had withdrawn from the 2225 Account approximately two days earlier.

22.    Thereafter, from in or about March 2013 through in or about April 2013, Employee-1 wire transferred approximately $400,000 from the Personal Savings Account to two newly-opened personal brokerage accounts that Employee-1 maintained in his own name at Fidelity in Cincinnati, Ohio (the "Fidelity Spending Account" and the "Fidelity Trading

6

Account").   Employee-1 opened both the Fidelity Spending Account and the Fidelity Trading Account online on or about March 20, 2013.  The Fidelity account opening records indicate that Employee-1 was to use the Fidelity Spending Account for his "everyday spending," and that he was to use the Fidelity Trading Account for his "trading and investing."

23.    Of the approximately $400,000 that Employee-1 transferred from the Personal Savings Account to the Fidelity Spending Account and the Fidelity Trading Account, approximately $225,000 went to the  Fidelity Spending Account and approximately $175,000 went to the Fidelity Trading Account.  Apart from these transfers, no deposits appear to have been made into either the Fidelity Spending Account or the Fidelity Trading Account.

24.    Once Employee-1 received this money in the Fidelity Spending Account and the Fidelity Trading Account, Employee-1 transferred some of the money from the Fidelity Spending Account and the Fidelity Trading Account to other personal bank accounts that he held in his own name.  Specifically, Employee-1 transferred approximately $144,707.00 into the Wells Fargo Account, and approximately $13,090.00 into the Hingham Account.

### Employee-1's Fraud on Company-2

25.    On or about June 29, 2012, Employee-1, with the permission of Owner-1 and Owner-2 opened a business checking account for Company-2 at a New York, New York branch of Santander Bank, which bore an account number ending in 2128 (the "2128 Account").  On the account opening paperwork for the 2128 Account, Employee-1 listed himself as the president of Company-2 and gave himself sole signing authority on the account.

26.    Although Employee-1 initially reported Company-2's business activities to Owner-1 and Owner-2, Employee-1 stopped communicating with Owner-1 and Owner-2 in or

about February of 2013.

27.     From on or about January 1, 2013 through on or about February 14, 2013, Employee-1 made approximately thirty unauthorized purchases from the 2128 Account, which totaled approximately $8,278.62 (the "Unauthorized Purchases"). The Unauthorized Purchases included a number of check card purchases from Staples, Best Buy, Zipcar, and Delta Airlines. Owner-1 and Owner-2 are not aware of any legitimate business purpose for the Unauthorized Purchases, which were made without Owner-1's and Owner-2's knowledge or authorization. Prior to Employee-1 making the Unauthorized Purchases from the account, the balance of the account was approximately $8,397.67.

28.     On or about February 21, 2013, Employee-1 withdrew approximately $113.05 in cash from the 2128 Account, leaving the 2128 Account with a balance of $0. This withdrawal was made without Owner-1's or Owner-2's knowledge or authorization.

### Employee-1 Ceases Communication and Leaves the Country

29.     In or about February 2013, Employee-1 stopped returning calls from Owner-1 and Owner-2 and ceased all communication with them.

30.     Moreover, after in or about the end of February 2013, when he ceased communication with Owner-1 and Owner-2, Employee-1 repeatedly left the United States and traveled to Puerto Vallarta, Mexico.

### The Seizure Warrants Executed by the FBI

31.     On or about October 23, 2014, the Honorable James L. Cott, United States Magistrate Judge for the Southern District of New York, issued seizure warrants for the following property (collectively, the "Property"), finding that there was probable cause to believe

the Property constituted or was derived from proceeds traceable to wire fraud:

   a. Any and all funds on deposit in the Fidelity Spending Account;

   b. Any and all funds on deposit in the Fidelity Trading Account;

   c. Up to $144,707 on deposit in the Wells Fargo Account; and

   d. Up to $13,090 in the Hingham Account.

  32. On or about the same date, pursuant to the seizure warrants for the Property that were issued by the Honorable James L. Cott, the FBI seized the Defendants-In-Rem, which consist of:

   a. Approximately $30,007 seized from the Fidelity Spending Account;

   b. Approximately $193,781 seized from the Fidelity Trading Account;

   c. Approximately $4,606.71 seized from the Wells Fargo Account; and

   d. Approximately $13,090 seized from the Hingham Account.

  33. The Defendants-In-Rem are currently in the possession of the FBI.

## CLAIM FOR FORFEITURE

  34. Incorporated herein are the allegations contained in paragraphs 1 through 33 of this Verified Complaint.

  35. Title 18, United States Code, Section 981(a)(1)(C), provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of … any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title) or a conspiracy to commit such offense" is subject to forfeiture.

  36. Title 18, United States Code, Section 1956(c)(7)(A), in turn, provides that the term "specified unlawful activity" includes "any act or activity constituting an offense listed in

section 1961(1) of this title." Included among the enumerated offenses in Title 18, United States Code, Section 1961(1) is Title 18, United States Code, Section 1343, which prohibits wire fraud.

37.     Title 18, United States Code, Section 1343, provides criminal penalties for:

> [w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

38.     The Defendants-In-Rem are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) because there is probable cause to believe that they constitute or are derived from proceeds traceable to wire fraud in violation of Title 18, United States Code, Section 1343.

39.     By reason of the foregoing, the Defendants-In-Rem became and are subject to forfeiture to the United States of America, pursuant to Title 18, United States Code, Section 1343.

WHEREFORE, plaintiff United States of America prays that process be issued to enforce the forfeiture of the Defendants-In-Rem and that all persons having an interest in the Defendants-In-Rem be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture to the Defendants-In-Rem to the United States of America for disposition

according to law; and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated:     New York, New York
           March 20, 2015

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for Plaintiff
                                        United States of America


                    By:    _____
                                        SARAH PAUL
                                        Assistant United States Attorney
                                        One St. Andrew's Plaza
                                        New York, New York 10007
                                        Telephone:  (212) 637-2326

11

## VERIFICATION

STATE OF NEW YORK               )
COUNTY OF NEW YORK           )  ss:
SOUTHERN DISTRICT OF NEW YORK   )


     BEMPSEY G. CO, being duly sworn, deposes and says that he is a special agent

with the Federal Bureau of Investigations, and as such have responsibility for the within action,

that he has read the foregoing complaint and know the contents thereof, and that the same is true

to the best of his own knowledge information and belief.

     The source of his information and the grounds of his belief are official records

and files of the United States, official state court records and information obtained during an

investigation of alleged violations of Title 18 of the United States Code.


                         _____
                         BEMPSEY G. CO
                         Special Agent
                         Federal Bureau of Investigations


Sworn to before me this
_20__ day of March, 2015

_____
NOTARY PUBLIC


        KEVIN C. GORMAN
     Notary Public, State of New York
        No. 02GO6161201
     Qualified in WESTCHESTER County
  Commission Expires FEBRUARY 20, 2017